O                    **PRIORITY SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES -- GENERAL</u>

Case No.   EDCV 10-00973 VAP(DTBx)                    Date:  November 9, 2011

Title:   RENE O. QUIROZ SANDOVAL, MIGUEL ANGEL ARDON, JORGE
REYES NUNEZ, OSCAR ABREW, JOSE M. VARGAS ON BEHALF OF
THEMSELVES, THE GENERAL PUBLIC, AND ALL OTHER SIMILARLY
SITUATED -v- ROADLINK USA PACIFIC, INC., A CALIFORNIA
CORPORATION AND DOES 1 THROUGH 100, INCLUSIVE
===============================================================
PRESENT:        HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

        Marva Dillard                          None Present
        Courtroom Deputy                       Court Reporter

ATTORNEYS PRESENT FOR                 ATTORNEYS PRESENT FOR
PLAINTIFFS:                           DEFENDANTS:

        Richard E. Donahoo                    Kathleen C. Jeffries

PROCEEDINGS:        MINUTE ORDER ADVISING PARTIES OF TENTATIVE
                    OPINION (IN CHAMBERS)

        Before the Court is a Motion for Preliminary Approval of Class Action
Settlement ("Motion") filed by Plaintiffs Rene O. Quiroz Sandoval, Miguel Angel
Ardon, Jorge Reyes Nunez, Oscar Abrew, and Jose M. Vargas (collectively,
"Plaintiffs") on behalf of themselves and all others similarly situated (collectively,
"Class Members").  Prior to the November 7, 2011 hearing on the Motion, the Court
advises the parties of its tentative ruling DENYING Plaintiffs' Motion without
prejudice.

MINUTES FORM 11                              Initials of Deputy Clerk ___md___
CIVIL -- GEN                    Page 1

EDCV 10-00973 VAP(DTBx)
RENE O. QUIROZ SANDOVAL, et al. v. ROADLINK USA PACIFIC, INC., etc., et al.
MINUTE ORDER of November 9, 2011

# I. BACKGROUND

Plaintiffs and the proposed class members are current or former hourly employees of Defendant Roadlink USA Pacific LLC ("Defendant"), a transportation and logistics company.  Plaintiffs allege Defendant engaged in a pattern and practice of failing to compensate its employees for overtime, requiring employees to work through meal and rest periods without compensation, and requiring employees to work "off the clock."  (Compl. (Doc No. 1) ¶¶ 1-5; 27.)  Plaintiffs defined two classes in their Complaint: Class A are all current and former employees Defendant employed as Truck Drivers within California within four years of the filing of the original complaint until the date of entry of judgment; Class B are all former employees Defendant employed as Truck Drivers within California within on year of the filing of the original complaint until the date of entry of judgment.  (Compl. ¶ 16.)


On March 18, 2010, Plaintiffs filed their Complaint against Defendant in the California Superior Court for the County of San Bernardino, alleging claims for:

1.   Failure to Pay Overtime in violation of California Labor Code §§ 226, 510, 1194, et seq. (Brought on Behalf of Plaintiffs and Class A);

2.   Failure to Pay Wages in violation of California Labor Code §§ 201, 202, 1198 (Brought on Behalf of Plaintiffs and Class A);

3.   Failure to Provide Meal Periods or Compensation in Lieu Thereof in violation of California Labor Code §§ 226.7 and 512 (Brought on Behalf of Plaintiffs and Class A);

4.   Failure to Pay Wages of Terminated or Resigned Employees in violation of California Labor Code §§ 201-203 (Brought on Behalf of Plaintiffs and Class B);

5.   Racial Discrimination in violation of California Government Code § 12940 (Brought on Behalf of Plaintiffs);

6.   Wrongful Termination in violation of Public Policy (Brought on Behalf of Plaintiffs); and

7.   Unfair Competition in violation of California Business & Professions Code § 17200, et seq. (Brought on Behalf of Plaintiffs, Class A and B, and the California General Public).

On June 11, 2010, Defendant filed its answer. (Not. of Removal Ex. A. (Doc. No. 1).)  On July 1, 2010, Defendant filed its Notice of Removal, removing the case to this Court on the basis of this Court's diversity jurisdiction.  (Not. of Removal at 2.)

Plaintiffs filed a Motion to Remand on July 30, 2010.  (Doc. No. 9.)  On August 23, 2010, Defendant filed its Opposition.  (Doc. No. 17.)  Plaintiffs filed their Reply untimely on September 7, 2010.  (Doc. No. 19; see also L. R. 7-10 (requiring replies, if any, to be filed "not later than fourteen (14) days before the date designated for the hearing of the motion").)  The Court denied the Motion to Remand on September 14, 2010.  (Doc. No. 20.)

The parties stipulated repeatedly to extend the time to file a motion for class certification.  (See Doc. Nos. 18, 22, 26.)  In the interim, Plaintiffs filed - and the Court granted on May 23, 2011 - a Motion to Compel Production of Documents by Defendant.  (See Doc. Nos. 31, 32.)  The parties then stipulated to provide notice of the lawsuit to current and former employees.  (Doc. Nos. 31, 32.)

Plaintiffs filed a Motion for Class Certification on July 11, 2011.  (Doc. No. 34.)  On July 29, 2011, the parties stipulated to continue and stay the deadlines in order to finalize their settlement agreement and file a motion for preliminary approval of the settlement.  (Stip. to Stay Deadlines Due to Settlement (Doc. No. 35.) ¶ 4.)

On October 3, 2011, Plaintiffs filed an unopposed "Motion for Order: (1) Conditionally Certifying a Settlement Class; (2) Preliminarily Approving Class Action Settlement; (3) Approving Notice of Class Action Settlement; and 4) Setting Hearing For Final Approval," the Declaration of Richard E. Donahoo ("Donahoo Declaration"), a Proposed Order, and Proposed Claim and Notice Forms.  (Doc. No. 39.)

## II. LEGAL STANDARD

### A.    Class Certification

Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997).  A court considering such a request

should give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context."  Id.

> Under Rule 23(a), in order to bring a class action, a plaintiff must demonstrate:
> (1) the class is so numerous that joinder of all members is impracticable ["numerosity"], (2) there are questions of law or fact common to the class ["commonality"], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"], and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"].

In addition to these prerequisites, a plaintiff must satisfy one of the prongs of Rule 23(b) in order to maintain a class action.  Where, as here, a plaintiff moves for class certification under Rule 23(b)(3), the plaintiff must prove:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.[1]

## B.   Approving Class Action Settlement

Rule 23(e) states: "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  The court must hold a hearing and find that the settlement "is fair, reasonable, and

---

[1] A fourth factor, "the difficulties likely to be encountered in the management of a class action," need not be considered when class certification is only for settlement purposes.  Fed. R. Civ. P. 23(b)(3)(D); Amchem Prods., 521 U.S. at 620.

EDCV 10-00973 VAP(DTBx)
RENE O. QUIROZ SANDOVAL, et al. v. ROADLINK USA PACIFIC, INC., etc., et al.
MINUTE ORDER of November 9, 2011

adequate." Fed. R. Civ. P. 23(e)(2). Review of a proposed settlement generally proceeds in two stages, a hearing on preliminary approval followed by a final fairness hearing. See Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed. 2004).

At the preliminary approval stage, a court determines whether a proposed settlement is "within the range of possible approval" and whether notice should be sent to class members. In re Corrugated Container Antitrust Litig., 643 F.2d 195, 205 (5th Cir. 1981); see also Gautreaux v. Pierce, 690 F.2d 616, 621 n. 3 (7th Cir. 1982) (stating that the purpose of a preliminary approval hearing is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing"); Manual for Complex Litigation § 21.632.

## III. DISCUSSION
### A.    Failure to Comply with Federal Rule of Civil Procedure 23(e)(3)

Under Federal Rule of Civil Procedure 23(e)(3), "[t]he parties seeking approval [of a class action settlement] must file a statement identifying any agreement made in connection with the proposal." By requiring multiple parties to file the required statement, Rule 23(e)(3) requires both the plaintiff and the defendant to file the statement identifying their agreement. See also 4 Newberg on Class Actions § 11.24 (4th ed.) (parties to a settlement "usually prepare and execute a joint stipulation of settlement [that] is submitted to the court for preliminary approval"). Here, Plaintiffs filed the Motion, but Defendant did not countersign the Motion or include a declaration in support of the Motion; Defendant only signed the Settlement Agreement. Accordingly, Plaintiffs' Motion violates Rule 23(e)(3).

The Court therefore DENIES Plaintiffs' Motion. Nevertheless, in the interest of judicial efficiency, the Court examines the substance of Plaintiffs' Motion and the proposed Settlement Agreement, but cautions Plaintiffs that the following analysis is based solely on the Settlement Agreement and Plaintiffs' representations.

### B.    Conditional Class Certification

In this Motion, Plaintiffs seek certification of the settlement class, described as: "all current and former employees employed by Defendant as truck drivers within the State of California from the period of March 18, 2006 through the Preliminary Approval Date of the class settlement."  (Donahoo Decl. (Doc. No. 39) Ex. A ("Settlement") § 1.3.)  Plaintiffs seek an injunction, declaratory relief, and damages for violations of their legal rights to meal breaks and overtime pay under California Labor Code Sections 226.7, 512, 226, 510, 1194 et seq.  (Compl. at 1.)

## 1.    Numerosity

To establish, under Rule 23(a)(1), that joinder of all members is "impracticable," the plaintiff need not show that it would be "impossible" to join every class member.  Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996). There is no specific number requirement, as the court may examine the specific facts of each case.  Ballard v. Equifax Check Servs., Inc., 186 F.R.D. 589, 594 (E.D. Cal. 1999).  Indeed, courts have not required evidence of specific class size or identity of class members to satisfy the requirements of Rule 23(a)(4).  Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993).

Here, Plaintiffs estimate the proposed class to be approximately 179 members. (Mot. at 8.)  Plaintiffs base this number on Defendant's records showing whom the trucking company employed as California truck drivers from March 18, 2006 to the present.  (Id.)  The Court finds it would be impracticable to require joinder here because of the large number of potential class members.  Thus, Plaintiffs satisfy the numerosity requirement of Rule 23.

## 2.    Commonality

Courts have construed Rule 23(a)(2)'s commonality requirement permissively. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  As the Ninth Circuit explained:

> All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

Id.

EDCV 10-00973 VAP(DTBx)
RENE O. QUIROZ SANDOVAL, et al. v. ROADLINK USA PACIFIC, INC., etc., et al.
MINUTE ORDER of November 9, 2011

Additionally, this Court has stated "the commonality requirement is interpreted to require very little," In re Paxil Litigation, 212 F.R.D. 539, 549 (C.D. Cal. 2003), and that "for the commonality requirement to be met, there must only be one single issue common to the proposed class." Haley, 169 F.R.D. at 648.

Here, Plaintiffs allege their meal break and overtime claims are subject to common facts that predominate. (Mot. at 9.) Plaintiffs claim that the deposition of Defendant's corporate designee Bill Medina shows that the scheduling of Defendant's truck drivers was the same at both the Northern California and Southern California locations. (Mot. at 9.) According to Medina's testimony, Defendant had centralized the hiring, scheduling, and payroll policies in California. (Id.) Plaintiffs, therefore, contend Defendant had a common policy for documenting meal breaks. (Id.)

Additionally, although Defendant's policy stated that supervisors would provide breaks to individual employees, Medina testified that the company did not follow this policy and, in fact, uniformly failed to comply. (Id. at 9-10.) Thus, the truck drivers faced the common fact that supervisor-provided meal breaks did not occur. (Id. at 10.) This establishes an issue common to the proposed class. See Haley, 169 F.R.D. at 648.

Plaintiffs also submit truck drivers' testimony to argue that Plaintiffs routinely did not receive the uninterrupted 30-minute meal break due to Defendant's scheduling policies. (Mot. at 10.) According to Plaintiffs' testimony, the company required drivers to arrive at the appointed destinations at scheduled times, which left drivers insufficient time to take a meal break. (Id.) Thus, drivers testified they were required to eat while driving or eat when a load was delivered and completed. (Id.) Defendant's scheduling practices present issues of fact common to the proposed class. Accordingly, Plaintiffs have met their burden of establishing "commonality" as required by Rule 23.

### 3.    Typicality

The Ninth Circuit in Hanlon explained that "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." 150 F.3d at 1020. Thus, to find typicality, a "court does

not need to find that the claims of the purported class representative are identical to the claims of the other class members." Haley, 169 F.R.D. at 649. Additionally, class representatives "must be able to pursue [their] claims under the same legal or remedial theories as the unrepresented class members." Paxil, 21 F.R.D. at 549.

Here, Plaintiffs provide evidence demonstrating their claims are typical of the proposed class members. The declarations of Plaintiffs suggest that company-wide policies created a work environment where truck drivers did not receive meal breaks. (Mot. at 11.) Medina's testimony also shows that Roadlink universally failed to follow its own established procedures to provide and document meal breaks. (Id. at 9.) Thus, the facts common to the proposed class create liability for claims that are typical to the class – violations of the Plaintiffs' legal rights to meal breaks. (Id. at 11.) Accordingly, Plaintiffs have established "typicality" under Rule 23.

### 4.   Adequacy of Representation

Traditionally, courts have engaged in a two-part analysis to determine if the plaintiff has met the requirements of Rule 23(a)(4): (1) the class representative must not have interests antagonistic to the unnamed class members and (2) the representative must be able to prosecute the action "vigorously through qualified counsel." Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).

Adequate representation "'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" Paxil, 212 F.R.D. at 550. Courts determine the adequacy of counsel under Rule 23(g). See Fed. R. Civ. P. 23(g) (the court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."); see, e.g., Hill v. Merrill Gardens, L.L.C., 2005 WL 2465250, at *3 (N.D. Ind. 2005); Fed. R. Civ. P. 23 Advisory Committee Notes.

EDCV 10-00973 VAP(DTBx)
RENE O. QUIROZ SANDOVAL, et al. v. ROADLINK USA PACIFIC, INC., etc., et al.
MINUTE ORDER of November 9, 2011

Here, Plaintiffs provide evidence sufficient to demonstrate purported class counsel's qualifications.  (See Donahoo Decl. ¶ 3-12 (discussing the individual expertise and experience of the purported class counsel, as well as the litigation and settlement strategies counsel used to obtain the settlement).)

The Court next considers the likelihood of collusion.  The collusion inquiry "addresses the possibility the agreement is the result of either overt misconduct by the negotiators or improper incentives for certain class members at the expense of other members of the class."  In re M.L. Stern Overtime Litig., 2009 W.L. 995864, at *5 (S.D. Cal. 2009) (citing Staton v. Boeing Co., 327 F.3d 938, 960 (9th Cir. 2003)). Here, the parties engaged in extensive discovery, including document requests, Plaintiffs' motion to compel discovery, and the deposition of Defendant's corporate designee.  (See Donahoo Decl. ¶¶ 17-21.)  Settlement negotiations were ongoing and proceeded "at arms length."  (Id. ¶ 24.)  Because there is no evidence of overt misconduct, the Court's inquiry focuses on the aspects of the settlement that are susceptible to self-interested misconduct - attorneys' fees and the proposed individual awards to class representatives.

Although the Court makes no findings as to Plaintiffs' request for attorneys' fees at this stage, the maximum amount allowed under the settlement agreement surpasses the "benchmark" for common fund cases in the Ninth Circuit.  Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268 (9th Cir. 1989).  The Ninth Circuit has set attorneys' fees of up to 25% as the benchmark in class action common fund cases.  See Hanlon, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees.")  Hence, the maximum award of 33.3% under the Settlement Agreement falls well above the benchmark.

Agreements not to oppose an attorneys' fee request up to a certain amount, however, are proper.  See, e.g., Malchman v. Davis, 761 F.2d 893, 905 n.5 (2d Cir. 1985) (abrogated on other grounds); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 618-20 (1997) (upholding agreement not to oppose an attorneys' fee of up to $2.325 million in a settlement agreement involving a payment of $6.86 million to the represented class).  Here, the settlement agreement leaves the final amount "subject to court approval."  (Settlement ¶ 3.6(b).)  Thus, Defendant's agreement not to oppose attorneys' fees of up to one third the settlement amount do not necessarily

undermine the adequacy of representation for the purposes of preliminary certification for settlement approval.

Nevertheless, the Court finds the proposed awards to Plaintiffs of $12,500 for their individual race discrimination claims undermine the adequacy of class representation.  (See Compl. ¶¶ 59-63 (describing Plaintiffs' individual claims of race discrimination in violation of California Government Code Section 12940).)  Though the settlement does not provide Plaintiffs with an extra payment for their role as class representatives, the agreement deducts the awards for the representatives' individual claims from the Maximum Settlement Fund.  (Settlement ¶ 1.18.)  This serves as de facto "incentive pay" because the payment for the individual awards is tied to the class recovery amount.  See Federal Civil Procedure Before Trial, § 10:367.1 (The Rutter Group 2011).  The individual awards, therefore, create a potential conflict of interest rendering Plaintiffs inadequate class representatives.  Rodriguez v. West Pub. Corp, 563 F.3d 948, 959 (9th Cir. 2009).

Under the settlement, named Plaintiffs each receive $12,500 out of the Maximum Settlement Fund of $325,000 for their individual claims of race discrimination.  (Settlement ¶ 3.6(d).)  This amounts to an individual award of 3.85% of the total settlement amount - an award that is orders of magnitude above other "incentive awards" that courts have approved.  See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir.2000) (approving incentive awards of $5,000 each to two class representatives of 5,400 potential class members in a settlement of $1.725 million); In re US Bancorp Litig., 291 F.3d 1035, 1038 (8th Cir. 2002) (approving $2,000 incentive awards to five named plaintiffs out of a class potentially numbering more then 4 million in a settlement of $ 3 million); Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving, in the context of a recovery of more than $14 million, an incentive payment of $25,000 to one named plaintiff who "spent hundreds of hours with his attorneys and provided them with 'an abundance of information'"); In re Cont'l Ill. Sec. Litig., 962 F.2d 566, 571-72 (7th Cir. 1992) (upholding a district court's rejection of a proposed $10,000 award to a named plaintiff "for his admittedly modest services"); In re SmithKline Beckman Corp. Sec. Litig., 751 F. Supp. 525, 535 (E.D. Pa. 1990) (approving $5,000 awards for one named representative of each of nine plaintiff classes involving more than 22,000 claimants in a settlement of $22 million); see also Staton, 327 F.3d at 948 (rejecting

an average individual award of $30,000 out of a proposed settlement amount of $7.3 million).  Thus, Plaintiffs' individual awards of $12,500 in a settlement of $325,000 represents a percentage amount well above what courts have approved as "incentive awards" in other cases.

While Plaintiffs' individual claims of race discrimination do not directly conflict with the class claims of compensation for unpaid wages and failure to provide meal breaks, the individual award amount under the settlement agreement represents a substantial deduction from the class recovery amount, and thus, suggests collusion. The Court finds this undermines Plaintiffs' ability to adequately represent the class. Thus, Plaintiffs fail to establish "adequacy of representation" under Rule 23.

**5.    Predominance of Common Questions of Law or Fact and Superiority of a Class Action**

Plaintiffs' Complaint alleges that a class action is superior to other available means for adjudicating Class Members' claims.  Plaintiffs' presented evidence substantiates this allegation.  Plaintiffs' counsel analyzed the number of days worked over five hours and ten hours by each of the 179 members of the class, and the overall weeks worked and the average number of meal breaks earned.  (Donahoo Decl. ¶ 20.)  This analysis illustrates that resolution of the Class Members' claims and Plaintiffs' claim involve common issues - namely, Defendant's failure to permit employees to take meal and rest breaks and to compensate employees properly for all hours worked.  It does not appear that Class Members would have claims raising disparate factual or legal issues.  Accordingly, Plaintiffs meet their burden of showing "predominance of common questions of fact or law" and the "superiority of a class action" under Rule 23.

Based on the foregoing, the Court DENIES Plaintiffs' Motion as to conditional class certification.

**C.    Fairness, Reasonableness, and Adequacy of the Proposed Settlement**

In determining whether or not the settlement is fair, reasonable, and adequate, courts balance several factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of

EDCV 10-00973 VAP(DTBx)
RENE O. QUIROZ SANDOVAL, et al. v. ROADLINK USA PACIFIC, INC., etc., et al.
MINUTE ORDER of November 9, 2011

maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) and the reaction of the class members to the proposed settlement. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291 (9th Cir. 1992).

### 1. Strength of Plaintiffs' Case

Plaintiffs acknowledge that their claim of unpaid overtime wages is weak since Defendant produced evidence demonstrating Plaintiffs were covered by the California Motor Carrier Exemption, which exempts them from overtime pay. (Mot. at 18.) Plaintiffs contend, however, their additional class claim - that Defendant failed to provide meal breaks - remains strong. (Id.) Defendant's corporate signee Medina testified that Defendant "failed to follow its established procedures to provide and document meal breaks to truck drivers." (Mot. at 9.) Additionally, Plaintiffs testified that drivers "could not and did not receive an uninterrupted 30 minute meal period break." (Id. at 10.) Plaintiffs assert that the proposed class qualifies for meal time breaks under California Labor Code Sections 226.7 and 512. (Compl. ¶¶ 49-53.) Here, the merits of the meal break claim appear strong and support the approval of the preliminary settlement.

Plaintiffs' claim involves an employer's provision of timely off-duty meal periods, an issue currently pending before the California Supreme Court. See Brinker v. Super. Ct., 165 Cal. App. 4th 25 (2008), rev. granted, 85 Cal. Rptr. 3d 688 (2008); Brinkley v. Public Storage, Inc., 167 Cal. App. 4th 1278 (2008), rev. granted, 87 Cal. Rptr. 3d 674 (2009). The California Supreme Court's pending decision in Brinker / Brinkley, may affect significantly the viability of Plaintiffs' claims. Plaintiffs acknowledge this decision may eliminate or diminish Plaintiffs' claim for compensation for failure to provide meal breaks. (Mot. at 18.) Nevertheless, as settlement here would remove the uncertainty caused by the pending Brinker / Brinkley decision, the Court finds this factor weighs in favor of the proposed Settlement Agreement.

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

EDCV 10-00973 VAP(DTBx)
RENE O. QUIROZ SANDOVAL, et al. v. ROADLINK USA PACIFIC, INC., etc., et al.
MINUTE ORDER of November 9, 2011

Plaintiffs contend that since the case will likely turn on legal issues, the risk of loss to both sides is great and the likelihood of appeals is also high.  (Donahoo Decl. ¶ 35.)  Plaintiffs, however, do not suggest the level of risk is greater here than in other class action wage and hour lawsuits.  In fact, Plaintiffs describe the risks as "inherent in all class action wage and hour lawsuits."  (Id.)  Hence, Plaintiffs fail to show how the risks of this particular class action weigh in favor of settlement.

For the risk of further litigation, however, the California Supreme Court's pending decision in Brinker / Brinkley may affect the viability of Plaintiffs' claims, exposing continued litigation to substantial risk.  The substantial risk of continued litigation in light of this decision, therefore, weighs in favor of settlement.

The "expense" and "duration" of further litigation also weigh in favor of the Settlement.  Plaintiffs contend that the "high expense and likely length of continued proceedings" make settlement appropriate.  (Id.)  Here, Defendant removed the action to this Court on July 7, 2010.  (Doc. No. 1.)  Since removal, Plaintiffs moved to remand, to compel discovery, and to certify the class.  (See Doc. Nos. 9, 28, 34.)  Plaintiffs anticipate "years of litigation to reach a judgment that was by no means preordained" in the absence of settlement.  (Donahoo Decl. ¶ 36.)  Thus, the Court finds that absent a settlement, the parties likely would engage in further lengthy litigation, with a concomitant increase in both expense and delay.  The Court therefore finds that the "expense" and "duration" of further litigation weighs in favor of the Settlement Agreement.

Plaintiffs do not address the relative complexity of this class action.  As the "complexity" is neutral, but the "risk," "expense," and likely "duration" of further litigation weigh in favor of settlement, the Court finds this factor weighs in favor of approval.

## 3.    Risk of Maintaining Class Action Status throughout the Trial

Plaintiffs argue that the possibility that the Court may not certify the case as a class action weighs in favor of settlement.  (Id. ¶ 36.)  The Court does not find, however, that there is a specific risk of maintaining the class action status throughout the trial.  Here, Plaintiffs assert a class of "all current and former

employees employed by Defendant as truck drivers within the State of California from the period of March 18, 2006 through the Preliminary Approval Date of the class settlement."  (Settlement § 1.3.)  The numerosity of the class, as well as the typicality, and commonality of their claims will likely remain constant throughout trial.  Thus, the Court finds this factor weighs against settlement.

### 4.   Amount Offered in Settlement

The Settlement Agreement provides that each participating class member will receive an amount based on the Net Workweek Value multiplied by the number of weeks worked as a driver.  (Settlement ¶ 3.6(e).)  In determining the Net Workweek Value, Plaintiffs do not include an estimated amount for the alleged overtime claims, as Plaintiffs acknowledge those claims may be weak.  (Donahoo Decl. ¶ 26.)  Plaintiffs' counsel instead provides an estimate based on the meal break claims.  Counsel estimates that the Class Members earned an average of 4.79 breaks per week based on the number of days that a class member worked over five or ten hours.  (Id. ¶ 27.)  Based on an average pay rate of $13.00, Plaintiffs contend Defendant faces liability for damages between zero and $444,109 for the meal period claim.  (Id. ¶ 28.)  For purposes of the settlement, Plaintiffs assume a violation frequency of 25%, resulting in a payout of $111,027 for the meal break claim.  (Id. 32.)  Plaintiffs then include an amount of $24,640 to represent the remaining claims for overtime, penalties, and interest claims, resulting in an estimated total award to class members of $135,667.  This amounts to around $757.92 each for an estimated 179 members, assuming Class Members worked for similar amounts of time.  (Id.)

The Settlement Agreement sets the Maximum Settlement Sum at $325,000.  (Settlement ¶ 1.16.)  From this, the Net Settlement Sum subtracts attorneys' fees, costs, payment of individual claims, and settlement costs, leaving an amount of $146,667 as an award to class members.  (Id. ¶ 1.18.)  Under the agreement, then, each proposed class member would receive $819.39, assuming all 179 estimated class members participate and worked for similar time periods.  Thus, the Settlement Agreement would provide for Class Members to receive more than the amount estimated under a 25% liability rate.

Although the 25% liability rate does not seem unreasonable given the facts here, the Court does not reach that issue as the dispersal of the Maximum Settlement Sum is dispositive.  The Settlement Agreement gives a total award of $13,319.39 to each Named Plaintiff and only $819.39 on average to each Class Member.  The Court finds the difference between these awards to be too great for the settlement amount to be fair, reasonable, and adequate.  Thus, the amount of the award does not weigh in favor of settlement.

## 5.      Extent of Discovery Completed, and Stage of Proceedings

This factor requires that the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement."  Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998).  Here, Plaintiffs show their counsel conducted the following discovery: (1) production and review of Defendant's payroll documentation and Plaintiffs' employee records; (2) production of spreadsheets showing the number of workweeks, or partial weeks, worked by each member of the proposed class; (3) production of Class Members' names and contact information; and (4) the deposition of Defendant's corporate designee.  (Donahoo Decl. ¶¶ 17-19.)  Accordingly, the Court finds that the parties possessed sufficient information to make an informed decision about the settlement.

Further, no trial date has been set, and it appears the action has reached a settlement at a relatively early phase of the litigation.  The parties have not litigated the issue of class certification, and instead jointly stipulated to stay the deadline on the Motion to Certify Class in order to file preliminary approval of class settlement. (Doc. No. 37.)

This factor weighs in favor of the Court finding the Settlement Agreement reasonable.  It shows the attorneys have spent sufficient time to allow the parties to make an informed decision about settlement, but not a significant time; thus, this leaves more money for the class members to recover from the common fund. Accordingly, the Court finds that this factor supports preliminarily approving the settlement.

## 6.      Experience and Views of Counsel

EDCV 10-00973 VAP(DTBx)
RENE O. QUIROZ SANDOVAL, et al. v. ROADLINK USA PACIFIC, INC., etc., et al.
MINUTE ORDER of November 9, 2011

Plaintiffs' counsel Richard E. Donahoo has been practicing for 15 years and has developed an expertise in employment law, including wage and hour litigation. (Donahoo Decl. ¶ 3-4.)  Mr. Donahoo has been lead counsel in at least seven multi-party employment claims, including six class actions.  (Id. ¶ 5-9.)  Mr. Donahoo has also been named co-lead counsel in two contested motions for certification of nationwide collective actions in the United States District Court.  (Id. ¶ 10.)  Accordingly, the Court finds Mr. Donahoo is an experienced attorney.

Plaintiffs' counsel attests that the settlement amount is fair and reasonable taking into consideration the amounts received in other similar wage and hour class actions.  (Id. ¶ 39.)  Plaintiffs also represent that Defendant's counsel likewise agrees that settlement award is reasonable and should be approved.  (Id.)  As Defendant's counsel did not join Plaintiffs' motion or file a declaration in support of the Motion, however, the Court finds Plaintiffs' counsel's representation insufficient to determine the views of Defendant's counsel.  Thus, the Court finds this factor is neutral.

## 7. Class Members' Reaction to the Proposed Settlement

As no formal objections will be filed until the approach of final approval, this factor is also neutral at this time.

## 8. Attorneys' Fees and Individual Claims

The Motion and Settlement Agreement indicate Plaintiff will seek allocation of settlement funds for attorneys' fees and to satisfy Plaintiffs' individual claims of discrimination.  (Settlement ¶ 1.18.)  For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."  Staton, 327 F.3d at 963.

### a. Attorneys' Fees

Under the Settlement Agreement, Plaintiffs' counsel will apply for up to one third of the Maximum Settlement Sum or $108,333.00 in attorneys' fees.  (Settlement ¶ 1.18.)  Plaintiffs assert this amount is "less than the actual billable time incurred," and note that Defendant does not oppose this amount.  (Mot. at 21-22.)  Even if Defendant were to consent, this would not resolve the inquiry.  Instead, the Court

EDCV 10-00973 VAP(DTBx)
RENE O. QUIROZ SANDOVAL, et al. v. ROADLINK USA PACIFIC, INC., etc., et al.
MINUTE ORDER of November 9, 2011

evaluates whether the preliminary amount is fair, reasonable, and adequate for purposes of settlement.

Plaintiffs assert claims under California state law; California law thus governs their application for attorneys' fees. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). California recognizes the common fund doctrine for the award of attorneys' fees to prevailing plaintiffs whose efforts result in creation of a fund benefitting others. Serrano v. Priest, 20 Cal. 3d 25, 35 (1977). Under both California and Ninth Circuit precedent, a court may exercise discretion to award attorneys' fees from a common fund by applying either the lodestar method[2] or the percentage-of-the-fund method.[3] Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 254 (2001); Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002) (citing Vizcaino, 290 F.3d at 1047 ("Irrespective of the chosen method, 'the district court should be guided by the fundamental principle that fee awards out of common funds be 'reasonable under the circumstances.'")); Alberto v. GMRI. Inc., 252 F.R.D. 652, 667 (E.D. Cal. 2008).

For purposes of preliminary approval, Plaintiffs' requested amount of attorneys' fees appears excessive; under the common fund method, the applicable benchmark is 25%, and any adjustment to this benchmark must be supported by unusual circumstances. See Hanlon, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); Graulty, 886 F.2d at 272 (the 25% benchmark can be adjusted upward or downward "to account for any unusual circumstances[,]" but the justification for adjustment must be clear). Thus, the "25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be

---

[2] Under the lodestar method, the court calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hour rate and then enhancing that figure, if necessary to account for the risks associated with representation. Graulty, 886 F.2d at 272.

[3] Under the percentage-of-the-fund method, the court calculates the fee award by designating a percentage of the total common fund. Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

MINUTES FORM 11                                    Initials of Deputy Clerk ___md___
CIVIL -- GEN                        Page 17

EDCV 10-00973 VAP(DTBx)
RENE O. QUIROZ SANDOVAL, et al. v. ROADLINK USA PACIFIC, INC., etc., et al.
MINUTE ORDER of November 9, 2011

supported by findings that take into account all of the circumstances of the case."
<u>Vizcaino</u>, 290 F.3d at 1048.

Here, Plaintiffs request the Court approve the Settlement Agreement with the provision allowing for attorneys' fees of up to one third the Maximum Settlement Sum. (Mot. at 22-23; Settlement ¶ 1.16.) Given Plaintiffs' request and the presumptive benchmark for attorneys' fees in common fund cases in the Ninth Circuit, "the Court preliminarily concludes that it will not only award no more than 25% of the common fund in attorneys' fees, but that it will also only grant final approval to the [Settlement Agreement] if the request for attorneys' fees is reasonable and proportionate to the work performed." <u>Clesceri v. Beach City Invst'ns & Prot. Servs, Inc.</u>, No. CV-10-3873-JST (RZx), 2011 WL 320998, *10 (C.D. Cal. Jan. 27, 2011) (citing <u>Murillo v. Pac. Gas & Elec. Co.</u>, 266 F.R.D. 468, 480 (E.D. Cal. 2010)).

Additionally, Plaintiffs do not offer any evidence or support articulating the basis for their request of $7,500.00 in costs. Accordingly, the Court finds improper Plaintiffs' request for costs.

## b. Individual Claims

Plaintiffs seek to satisfy their individual claims of discrimination through awards taken from the Settlement. (Settlement § 1.16.) This amount is in addition to any recovery to which they may be entitled under the Settlement Agreement. (<u>Id.</u>) Though Plaintiffs do not call this an incentive award, the effect is the same. Plaintiffs will recover twice under the Settlement, once as a Class Member and once on their individual claims, creating an incentive payment that rewards their pursuit of the litigation.

The criteria courts may consider in determining whether to make an incentive award include:

1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit

(or lack thereof) enjoyed by the class representative as a result of the litigation.

Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

As discussed above, Plaintiffs request $12,500 for their individual claims in addition to their Class Member awards.  Class Members on the other hand will only recover $819.39.  The possibility of self-interested collusion is therefore great. Additionally, since Plaintiffs do not label the individual awards as "incentive awards", Plaintiffs do not address any of the factors necessary for the Court to consider the request.  Accordingly, Plaintiffs have not shown the disguised incentive payment is fair and reasonable.

**9. Conclusion**
Although many of the factors weigh in favor of settlement, Plaintiffs' disguised incentive pay weighs strongly against approving the settlement.  See Torrisi v. Tuscon Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993) ("different factors may predominate in different factual contexts").  The conflict of interest created by the relatively high payout that the individual Plaintiffs will receive by accepting a settlement offer renders the agreement inherently unfair.  While Plaintiffs will receive $12,500 for their individual claims plus the estimated $819.39 as their share of the Net Settlement Sum, the Class Members will only receive $819.39.  The disproportionate award for Plaintiffs suggests a conflict of interest.  The Court, therefore, finds the Settlement Agreement neither fair, reasonable, nor adequate.

**D.    Notice and Administrative Procedures**
Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  Fed. R. Civ. P. 23(e)(1).  Plaintiffs must provide notice that is "timely, accurate, and informative." See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989).  Likewise, claims forms must be informative and accurate.  Id. at 172; Churchill Village, LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alter those with adverse viewpoints to investigate and to come forward and be heard").
The proposed form of class notice submitted as Exhibit 1 to the Notice of Proposed Class Action Settlement, as well as the proposed claim and release, and

EDCV 10-00973 VAP(DTBx)
RENE O. QUIROZ SANDOVAL, et al. v. ROADLINK USA PACIFIC, INC., etc., et al.
MINUTE ORDER of November 9, 2011

election to be excluded forms attached as Exhibit 2 and 3, respectively, are adequate.  (Settlement ¶¶ 3.3-3.4; Proposed Not., Exs. 2, 3 (Doc. No. 39).) Plaintiffs, however, include a provision in the notice that binds non-responding Class Members to the settlement, but denies them any award.  (Proposed Not., Ex. 1 at 10.)  Given that Plaintiffs already have the employee records with the number of weeks each Class Member worked and the Class Members' addresses, the Court has reservations as to that provision.  (Donahoo Decl. ¶ 17-18 (describing how Plaintiffs' counsel obtained detailed employment records and contact information for Class Members)); see also Flores v. Nature Tech Landscaping, 2010 U.S. Dist. LEXIS 59979 *2-3 (C.D. Cal. June 14, 2010) (finding that monies from the settlement should be paid and distributed to non-responding class members where the class had a small number of members with known addresses).  While not ruling on the issue at this juncture, the Court finds that failure to file a claim should not be a complete bar to recovery here.

   **1.   Proposed Content of Notice**

   The Proposed Notice to Class Members ("Notice") explains that Defendant has agreed to settle a class actions lawsuit alleging that Defendant violated various California state labor laws by failing to pay overtime, pay for all hours worked, provide timely meal and rest breaks, pay all wages due to termination, and other claims to its California drivers between March 18, 2006 and the date of preliminary approval.  (Id. at 3.)  Section II of the Notice provides details on the Plaintiffs' class action complaint, listing all of the alleged claims, and acknowledges that Defendant has denied liability.  (Id. at 4.)

   The Notice describes the terms of the Settlement Agreement, including information on the Maximum Settlement Sum, the tentative approval of attorneys' fees, costs of administering the settlement, and the individual awards to Plaintiffs. (Id. at 5-6.)  The Notice explains the Claim Form and Release, and the Election to be Excluded Form.  (Id. at 6)  Section IV of the Notice provides the Class Member with an estimated calculation of his or her award based on the number of weeks worked for Defendant, but qualifies that this award may vary depending on the number of total weeks claimed by Class Members and verified in the challenge resolution process.  (Id. at 7.)  According to the Notice, the Class Members can challenge the estimated number of weeks worked on the Claim Form and Release and submit

MINUTES FORM 11                              Initials of Deputy Clerk ___md___
CIVIL -- GEN                    Page 20

information supporting the weeks he or she claims to have worked for Defendant. (Id. at 8.)

Section VI details how Class Members can opt out and object to the Settlement Agreement, and explains that the Class Members have a right to appear at the Final Fairness Hearing. (Id. at 11-12.) If the Class Member decides not to opt out, but does not return the Claim Form, the Notice states that the Class Member will be bound by the settlement, but will not receive a share of the settlement fund. (Id. at 9.) This bars Class Members from suing Defendant for any claims related to payment of overtime and minimum wage, uncompensated hours and failure to timely pay wages, all meal and rest break claims, claims for penalties under the California Labor Code, all wage statement claims, or unfair competition law claims for restitution. (Id. at 10.) As noted above, the Court has reservations with a complete bar to recovery for non-responding members as Plaintiffs already have the employee records of Class Members and have calculated an estimated recovery for each member.

Under the Settlement Agreement, the Class Member has 60 days to return by mail or fax the Claim Form to the Settlement Administrator. (Settlement ¶ 3.4(a).) If the Member misses the 60 day window, the Class Member will not be barred if the Class Member can establish that a bona fide hardship prevented him or her from timely returning the Claim Form. (Id.) If the Class Member submits a deficient Claim Form, the Settlement Administrator will mail a notice to the Class Member after which the Class Member will have 15 days to cure the deficiency. The Settlement Administrator will be the final arbiter to resolve any Class Member disputes concerning Defendant's records as to dates of employment. (Id.)

The Class Member will have 45 days from the date of the Notice mailing to postmark and send an exclusion request or objection. (Id. ¶ 3.4(b-c).) The Class Member who timely and validly requests exclusion will not be entitled to an individual settlement payment, will not be bound by the terms of the Settlement Agreement, and will not have any right to object, appeal, or comment. (Id. ¶ 3.4(c).) Counsel for the parties shall file any response to objections at least ten court days before the date of the Final Fairness and Approval Hearing. (Id.)

EDCV 10-00973 VAP(DTBx)
RENE O. QUIROZ SANDOVAL, et al. v. ROADLINK USA PACIFIC, INC., etc., et al.
MINUTE ORDER of November 9, 2011

### 2.    Proposed Scheduling for Notification

The Parties propose that no later than 20 days after the entry of an order granting this Motion, Defendant will provide the Settlement Administrator a "Class List" based on its business records, identifying the names of the Class Members, and providing information for producing claim forms and mailing class notice. (Proposed Order (Doc. No. 39) ¶ 6.)  No later than 35 days after this Motion is granted, the Settlement Administrator will send by first class mail the class notice and claim forms, which will be translated into Spanish, with a pre-paid, self-addressed return envelope.  (Id. ¶ 7.)

Unless and until the Court approves the Settlement Agreement in this case, the Court will not reach the question of whether or not Plaintiffs' proposed notice and claim forms are "timely, accurate, and informative." Hoffman-La Rouche Inc., 492 U.S. at 172.  At this point, there is no reason "to notify the class members of the proposed settlement and to proceed with a fairness hearing." Gautreaux, 690 F.2d at 621, n.3.

### IV. CONCLUSION

For the foregoing reasons, the Court:
(1)    DENIES Conditional Certification of Settlement Class;
(2)    DENIES Preliminary Approval of the Parties' Settlement; and
(3)    CONTINUES the Hearing on the Motion to November 21, 2011 at 2:00 p.m.

**IT IS SO ORDERED.**