**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RENE O. QUIROZ SANDOVAL, et al., | ) ) ) | Case No. EDCV 10-00973 VAP(DTBx) |
| Plaintiffs, | ) ) | **ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | ) ) | |
| ROADLINK USA PACIFIC, INC., A CALIFORNIA CORPORATION AND DOES 1 THROUGH 100, INCLUSIVE, | ) ) ) ) | **[Motion filed on June 4, 2012]** |
| Defendant. | ) | |

_____

Before the Court is a Motion for Final Approval of

Class Action Settlement filed by Plaintiffs Rene O.

Quiroz Sandoval, Miguel Angel Ardon, Jorge Reyes Nunez,

Oscar Abrew, and Jose M. Vargas (collectively,

"Plaintiffs") on behalf of themselves and all others

similarly situated (collectively, "Class Members").

After reviewing and considering all papers filed in

support of the Motion, the Court GRANTS the Motion.

1          **I. BACKGROUND**

2    **A.    Procedural Background**

3          Plaintiffs and the proposed Class Members are current

4    or former hourly employees of Defendant Roadlink USA

5    Pacific LLC ("Defendant"), a transportation and logistics

6    company.  Plaintiffs allege Defendant engaged in a

7    pattern and practice of failing to compensate its

8    employees for overtime work, requiring employees to work

9    through meal and rest periods without compensation, and

10   requiring employees to work "off the clock."  (Compl.

11   (Doc No. 1) ¶¶ 1-5; 27.)  Plaintiffs defined two classes

12   in their Complaint: Class A consists of all current and

13   former employees Defendant employed as Truck Drivers

14   within California within four years before the filing of

15   the original complaint until the date of entry of

16   judgment; Class B consists of all former employees

17   Defendant employed as Truck Drivers within California

18   within one year before the filing of the original

19   complaint until the date of entry of judgment.  (Id. ¶

20   16.)

21

22        On March 18, 2010, Plaintiffs filed their Complaint

23   against Defendant in the California Superior Court for

24   the County of San Bernardino, alleging claims for:

25        1.   Failure to Pay Overtime in violation of

26             California Labor Code §§ 226, 510, 1194, et seq.

27             (Brought on Behalf of Plaintiffs and Class A);

28

2.   Failure to Pay Wages in violation of California
     Labor Code §§ 201, 202, 1198 (Brought on Behalf
     of Plaintiffs and Class A);

3.   Failure to Provide Meal Periods or Compensation
     in Lieu Thereof in violation of California Labor
     Code §§ 226.7 and 512 (Brought on Behalf of
     Plaintiffs and Class A);

4.   Failure to Pay Wages of Terminated or Resigned
     Employees in violation of California Labor Code
     §§ 201-203 (Brought on Behalf of Plaintiffs and
     Class B);

5.   Racial Discrimination in violation of California
     Government Code § 12940 (Brought on Behalf of
     Plaintiffs);

6.   Wrongful Termination in violation of Public
     Policy (Brought on Behalf of Plaintiffs); and

7.   Unfair Competition in violation of California
     Business & Professions Code § 17200, et seq.
     (Brought on Behalf of Plaintiffs, Class A and B,
     and the California General Public).

On June 11, 2010, Defendant filed its answer. (Not.
of Removal Ex. A. (Doc. No. 1).)  On July 1, 2010,
Defendant filed its Notice of Removal, removing the case
to this Court on the basis of this Court's diversity
jurisdiction.  (Not. of Removal at 2.)

3

1   Plaintiffs filed a Motion to Remand on July 30, 2010.
2   (Doc. No. 9.)  On August 23, 2010, Defendant filed its
3   Opposition.  (Doc. No. 17.)  Plaintiffs filed their Reply
4   untimely on September 7, 2010.  (Doc. No. 19; see also L.
5   R. 7-10 (requiring replies, if any, to be filed "not
6   later than fourteen (14) days before the date designated
7   for the hearing of the motion").)  The Court denied the
8   Motion to Remand on September 14, 2010.  (Doc. No. 20.)
9
10  The parties stipulated repeatedly to extend the time
11  to file a motion for class certification.  (See Doc. Nos.
12  18, 22, 26.)  In the interim, Plaintiffs filed - and the
13  Court granted on May 23, 2011 - a Motion to Compel
14  Production of Documents by Defendant.  (See Doc. Nos. 31,
15  32.)  The parties then stipulated to provide notice of
16  the lawsuit to current and former employees.  (Doc. Nos.
17  31, 32.)
18
19  Plaintiffs filed a Motion for Class Certification on
20  July 11, 2011.  (Doc. No. 34.)  On July 29, 2011, the
21  parties stipulated to continue and stay the deadlines in
22  order to complete their settlement agreement and file a
23  motion for preliminary approval of the settlement.
24  (Stip. to Stay Deadlines Due to Settlement (Doc. No. 35.)
25  ¶ 4.)
26
27
28

4

1    On October 3, 2011, Plaintiffs filed an unopposed
2 "Motion for Order: (1) Conditionally Certifying a
3 Settlement Class; (2) Preliminarily Approving Class
4 Action Settlement; (3) Approving Notice of Class Action
5 Settlement; and 4) Setting Hearing For Final Approval,"
6 the Declaration of Richard E. Donahoo ("Donahoo
7 Declaration"), a Proposed Order, and Proposed Claim and
8 Notice Forms.  (First Mot. for Prelim. Approval (Doc. No.
9 39).)

10

11    Although Defendant did not oppose the First Motion
12 for Preliminary Approval of Class Settlement, Defendant
13 did not countersign the Motion or include a declaration
14 in support of the Motion.  (See Nov. 22, 2012, Order
15 (Doc. No. 46) at 5.)  Accordingly, Plaintiffs' Motion
16 violated Rule 23(e)(3), which requires "parties seeking
17 approval [of class action settlement] to file a statement
18 identifying any agreement made in connection with the
19 proposal."  See Fed. R. Civ. P. 23(e)(3).  For this
20 reason, the Court denied Plaintiffs' Motion.

21

22    The Court nevertheless analyzed the proposed
23 Conditional Class Certification and Settlement Agreement
24 in its Order.  The Court found Plaintiffs had shown
25 numerosity, commonality, and typicality under Rule 23,
26 and that there was a predominance of common questions of
27 law or fact.  (Nov. 22, 2012, Order at 6-11.)  Plaintiffs
28

1  had not, however, established "adequacy of

2  representation" because the named Plaintiffs' individual

3  awards for their claims of race discrimination were

4  included in the class recovery amount.  (<u>Id.</u> at 11.)

5  For this reason, the Court denied Plaintiffs' Motion as

6  to conditional class certification.  (<u>Id.</u> at 12.)

7

8     The Court went on to analyze the fairness,

9  reasonableness, and adequacy of the Proposed Settlement,

10  finding: 1) the strength of Plaintiffs' case weighed in

11  favor of the proposed Agreement; 2) the risk, expense,

12  complexity, and likely duration of further litigation

13  weighed in favor of the Agreement; 3) the risk of

14  maintaining the class action throughout the trial weighed

15  against settlement; 4) the amount offered in the

16  settlement weighed against settlement; 5) the extent of

17  discovery completed, and the stage of proceedings weighed

18  in favor of settlement; 6) the experience and views of

19  counsel were neutral; 7) Class Members' reaction to the

20  proposed settlement was neutral; and 8) the attorneys'

21  fees and individual claims weighed against approval of

22  the Agreement.  (<u>Id.</u> at 12-19.)  In considering all the

23  factors, the Court found Plaintiffs' individual awards

24  tipped the balance against approval of the proposed

25  settlement.  (<u>Id.</u> at 19-20.)

26

27

28

The Court found that the proposed form of class notice, as well as the proposed claim and release, and election to be excluded forms were adequate.  (Id.)  The Court, however, declined to make a final ruling on the scheduling and form of notice at that juncture.  (Id.)

On January 17, 2012, the parties filed jointly the Second Motion for Preliminary Approval, which remedied the deficiencies in the First Motion for Preliminary Approval.  (Second Mot. for Prelim. Approval (Doc. No. 47).)  First, Defendant's counsel filed a declaration stating Defendant consented to preliminary approval of the settlement, and supported Plaintiffs' Motion.  (First Decl. of A. Jack Finklea (Doc. No. 48) ¶ 4.)  Thus, Plaintiffs' Motion complied with Rule 23(e)(3).

Second, under the revised Settlement Agreement, named Plaintiffs did not receive individual awards from the settlement amount; instead, Plaintiffs resolved those claims in a separate individual settlement.  (Second Mot. for Prelim Approval at 4; see also Donahoo Decl. Ex. B (Named Plaintiffs' separate Settlement Agreement and Release).)  This served to mitigate against any potential self-interest on the part of named Plaintiffs, and ensured the negotiated Settlement provided a fair award for Class Members.  The Court therefore found Plaintiffs were now adequate class representatives, and certified

the class for purposes of preliminary approval of the Settlement.

The removal of the incentive awards from the Settlement amount also remedied the deficiencies in the initial proposed settlement.  Specifically, the amount offered in the settlement then weighed in favor of preliminary approval.  Hence, the Court found the modified Settlement Agreement to be fair, reasonable, and adequate, and granted preliminary approval.  (See Feb. 28, 2012 Order (Doc. No. 51).)

In the February 28, 2012, Order granting the Second Motion for Preliminary Approval ("Preliminary Approval Order"), the Court:

(1)  conditionally certified the Settlement Class;

(2)  granted preliminary approval of the parties' Settlement set forth in the jointly submitted Second Motion for Preliminary Approval;

(3)  directed dissemination of the Class Notice; and

(4)  set the hearing date for final approval, as well as dates for the notice and objection period. (See id.)

1    The Court set May 1, 2012, as the deadline for Class

2 Members to request exclusion from the Class, and ordered

3 the parties to file a motion for final approval of the

4 settlement no later than June 4, 2012.  (Id. at 7.)

5

6    On June 4, 2012, Plaintiffs filed the Motion for

7 Final Approval ("Motion"), and the declarations of

8 Richard E. Donahoo, Jack Finklea, and Tim Cunningham in

9 support of the Motion.  (Doc. Nos. 54-57.)  Plaintiffs

10 also filed the Motion for Approval of Attorneys' Fees and

11 Costs for Class Counsel ("Motion for Attorneys' Fees").

12 (Doc. No. 53.)

13

14 **B.   Settlement Terms**

15    The parties agreed to a Maximum Settlement Sum of

16 $241,500.00, which would include Class Counsel's attorney

17 fees and costs, the Settlement Administration Costs, and

18 the Individual Settlement Payments to participating Class

19 Members.  (See Settlement § 3.6(a).)  Defendant agreed to

20 pay the Maximum Settlement Amount in exchange for the

21 release of all claims alleged in the action.  (Id. §

22 5.2.)  This release would include named Plaintiffs and

23 all Class Members, except those who made a valid request

24 to be excluded from the Class by responding to the Notice

25 with a written request for exclusion within 45 days of

26 the initial Notice mailing.  (Id. §§ 5.1; 3.4(b).)  Any

27 residual amount of the Net Settlement Sum remaining after

28

1  the deduction of attorneys' fees and costs,

2  administration costs, and individual settlement payments

3  will be donated to the parties' agreed upon <u>cy</u> <u>pres</u>

4  recipient, the Children's Hospital of Orange County.[1]

5  (<u>Id.</u> § 3.6(f).)

6

7      Under the Settlement Agreement, Class Counsel will

8  submit an application for an award of attorneys' fees in

9  an amount not to exceed one third of the Maximum

10 Settlement Sum, or $80,419.00, for approval of the Court

11 at the Final Approval Hearing.  (<u>Id.</u> § (b).)  Class

12 Counsel will also submit an application for an award of

13 costs in an amount not to exceed $7,500.00.  (<u>Id.</u>)

14

15 **C.   Settlement Procedure**

16      **1.   Notice to Class Members and Claims Received**

17      The parties followed the process for providing notice

18 approved in the Preliminary Approval Order, although they

19 did not adhere precisely to all of the scheduled dates.

20 (<u>See</u> Feb. 28, 2012, Order at 5-6.)  Defendants were to

21 provide the Settlement Administrator with a Class List by

22 May 4, 2012, but the Settlement Administrator received

23 the List on May 5, 2012.  (<u>Id.</u>; Mot. at 6.)  The

24 Administrator was then to mail the notice packet by

25 first-class mail to each Class Member by March 19, 2012,

26 ───────────────

27      [1] The Court discusses the Settlement Agreement's <u>cy</u>
   <u>pres</u> distribution at length below.  (<u>See</u> Section III.D.)

28

1   but did not do so until March 29, 2012.  (Id.; Mot. at

2   7.)  The Court does not find these discrepancies,

3   however, to be so significant as to undermine final

4   approval.

5

6       The Settlement Administrator mailed notice packets to

7   219 Class Members, and has received 90 responses,

8   including 88 claims, and no written objections to the

9   settlement or requests for exclusion.  (Mot. at 7.)

10  There were 16 deficient claims and the Settlement

11  Administrator has sent letters in response, requesting

12  the Class Members cure the deficiencies.  (Id.)  There

13  were no late responses.  (Id.)

14

15      **2.  Notice of Settlement**

16      The notice packet included the Notice, the Claim

17  Form, a Request for Exclusion Form, a Rescission of

18  Exclusion Form, in both Spanish and English, and a

19  stamped envelope with the Settlement Administrator's

20  mailing address.  (Id. at 6.)  The Notice explained the

21  nature of the case, the proposed settlement, the

22  estimated amount of the Class Member's projected share of

23  the settlement, the Class Member's rights to receive a

24  share of the settlement funds, to challenge the number of

25  work weeks used to compute his or her share of the

26  settlement, to file objections to the settlement with the

27

28

11

1  Court, and to opt-out.   (See Second Mot. for Prelim.
2  Approval Ex. 1 at 3.)

3

4       The Claim Form required Class Members provide their
5  social security numbers, full names, current mailing
6  addresses, and phone numbers.   (See id. Ex. 2.)   The
7  Claim Form also included the total number of Class Member
8  Workweeks for the Class Member, and based on this figure,
9  calculated the Class Member's Settlement Award.   (Id.)
10  The Claim Form required the participating Class Member
11  sign a Statement of Release, in which the Class Member
12  released Defendant from all claims which were alleged, or
13  could have been alleged, relating to claims for overtime,
14  minimum wage, meal and rest breaks, and penalties under
15  California Labor Code Sections 203, 226(e), 226.7(b), 558
16  and 1194.2, and PAGA, as well as unfair competition law
17  claims for restitution.   (Id.)   The Class Form also
18  stated the date on which Class Members were required to
19  postmark their completed Claim Forms and Releases.   (Id.)

20

21                    **II. LEGAL STANDARD**
22  **A.   Class Certification**

23       Parties seeking class certification for settlement
24  purposes must satisfy the requirements of Federal Rule of
25  Civil Procedure 23 ("Rule 23").   Amchem Prods., Inc. v.
26  Windsor, 521 U.S. 591, 620 (1997).   A court considering
27  such a request should give the Rule 23 certification

28

factors "undiluted, even heightened, attention in the

settlement context."  Id.


    Under Rule 23(a), in order to bring a class

action, a plaintiff must demonstrate:

        (1) the class is so numerous that joinder of all
        members is impracticable ["numerosity"], (2) there
        are questions of law or fact common to the class
        ["commonality"], (3) the claims or defenses of the
        representative parties are typical of the claims
        or defenses of the class ["typicality"], and (4)
        the   representative   parties   will   fairly   and
        adequately   protect   the   interests   of   the   class
        ["adequacy of representation"].


    In addition to these prerequisites, a plaintiff must

satisfy one of the prongs of Rule 23(b) in order to

maintain a class action.  Where, as here, a plaintiff

moves for class certification under Rule 23(b)(3), the

plaintiff must prove:

        the questions of law or fact common to the members
        of   the   class   predominate   over   any   questions
        affecting   only   individual   members,   and   that   a
        class   action   is   superior   to   other   available
        methods for the fair and efficient adjudication of
        the   controversy.   The   matters   pertinent   to   the
        findings include: (A) the interest of members of
        the   class   in   individually   controlling   the
        prosecution   or   defense   of   separate   actions;   (B)
        the extent and nature of any litigation concerning
        the   controversy   already   commenced   by   or   against
        members   of   the   class;   (C)   the   desirability   or
        undesirability of concentrating the litigation of
        the claims in the particular forum.[2]

_____

    [2] A fourth factor, "the difficulties likely to be
encountered in the management of a class action," need
not be considered when class certification is only for
settlement purposes.  Fed. R. Civ. P. 23(b)(3)(D); Amchem
Prods., 521 U.S. at 620.

13

**B.   Approving Class Action Settlement**

Rule 23(e) states: "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  The court must hold a hearing and find that the settlement "is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Review of a proposed settlement generally proceeds in two stages, a hearing on preliminary approval followed by a final fairness hearing.  <u>See</u> Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed. 2004).

### III. DISCUSSION

**A.   Class Certification**

Based on the showing made by the parties in support of the Motion for Preliminary Approval and the Motion for Final Approval and as discussed more fully in the Preliminary Approval Order, the Court finds the parties have met their burden as to the prerequisites for class certification set forth in Rule 23(a) and (b)(3).

Specifically, the proposed class potentially includes 219 Class Members, and therefore is so numerous that joinder is impracticable.  (Mot. at 6.)  As to commonality, Defendant's scheduling practices present issues of fact common to the proposed class.  (<u>See</u> Nov. 46, 2011, Order (Doc. No. 46) at 6-7.)  Thus, Plaintiffs'

meal break and overtime claims are subject to common

facts that predominate.  As to typicality, the facts

common to the proposed class create liability for claims

that are typical to the class – violations of the

Plaintiffs' legal rights to meal breaks.  (Id. at 8.)


   As to adequacy of representation, Plaintiffs provide

evidence sufficient to demonstrate purported Class

Counsel's qualifications.  (See Donahoo Decl. ¶ 3-12

(discussing the individual expertise and experience of

the purported Class Counsel, as well as the litigation

and settlement strategies counsel used to obtain the

settlement).)


   Finally, Plaintiffs' presented evidence demonstrates

that a class action is superior to other available means

for adjudicating Class Members' claims.  Plaintiffs'

counsel analyzed the number of days worked over five

hours and ten hours by each of the 179 members of the

class, and the overall weeks worked and the average

number of meal breaks earned.  (Id. ¶ 20.)  This analysis

illustrates that resolution of the Class Members' claims

and Plaintiffs' claim involve common issues - namely,

Defendant's failure to permit employees to take meal and

rest breaks and to compensate employees properly for all

hours worked.  It does not appear that Class Members

would have claims raising disparate factual or legal

issues.  Accordingly, Plaintiffs meet their burden of showing "predominance of common questions of fact or law" and the "superiority of a class action" under Rule 23.

**B.   Fairness, Reasonableness, and Adequacy of the Settlement**

In determining whether or not the settlement is fair, reasonable, and adequate, courts balance several factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) and the reaction of the class members to the proposed settlement.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291 (9th Cir. 1992).

This is "by no means an exhaustive list of relevant considerations," though, and "[t]he relative degree of importance to be attached to any particular factor will depend on the unique circumstances of each case." Officers for Justice v. Civil Serv. Com., 688 F.2d 615, 625 (9th Cir. 1982).

1    In evaluating a proposed settlement, "[i]t is the
2  settlement taken as a whole, rather than the individual
3  component parts, that must be examined for overall
4  fairness." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026
5  (9th Cir. 1998).  The Court "does not have the ability to
6  delete, modify, or substitute certain provisions," and
7  "[t]he settlement must stand or fall in its entirety."
8  Id.  The question is not whether the settlement "could be
9  prettier, smarter, or snazzier," but solely "whether it
10 is fair, adequate, and free from collusion."  Id. at
11 1027.

12

13    **1.   Strength of Plaintiffs' Case**
14    The courts evaluate the strength of a plaintiff's
15 case in order to "judge the fairness of a proposed
16 compromise." Carson v. American Brands, Inc., 450 U.S.
17 79, 88 n.14 (1981).  The court determines whether the
18 likelihood of success warrants the amount and form of
19 relief offered in the settlement.  Id.

20

21    Although there is no finding and no admission of
22 liability, the Court has considered Plaintiffs' case and
23 finds that the likelihood of success on the merits
24 remains relatively strong.  In seeking preliminary
25 approval, Plaintiffs acknowledged the weakness in their
26 claim of unpaid overtime wages, i.e., Defendant produced
27 evidence demonstrating Plaintiffs were covered by the
28

California Motor Carrier Exemption, which exempts them from overtime pay.  (Mot. for Prelim. Approval (Doc. No. 39-1) at 18.)  The merits of Plaintiffs' meal break claim, however, appeared strong at the time the Court granted preliminary approval.  (See Feb. 28, 2012, Order; Nov. 22, 2011, Order at 12-13.)  The Court noted, though, that Plaintiffs' claim involved an employer's provision of timely off-duty meal periods, an issue then pending before the California Supreme Court.  See Brinker v. Super. Ct., 165 Cal. App. 4th 25 (2008), rev. granted, 85 Cal. Rptr. 3d 688 (2008); Brinkley v. Public Storage, Inc., 167 Cal. App. 4th 1278 (2008), rev. granted, 87 Cal. Rptr. 3d 674 (2009).  Thus, the Court found that the California Supreme Court's decision might affect the viability of Plaintiffs' claim.

Since then, the California State Supreme Court has resolved the issue of an employer's provision of timely off-duty meal periods.  See Brinker Rest. Corp. v. Super. Ct., 53 Cal. 4th 1004 (2012).  The court clarified that employers do not need to ensure work stops during meal periods, but are obligated only to make meal periods available to employees.  Id. at 1034.  The Court therefore reconsiders the strength of Plaintiffs' meal break claim in light of this case.  Here, the evidence presented at the preliminary approval stage suggests Plaintiffs have a strong meal break claim even under the

new standard.  Defendant's corporate designee Medina testified that Defendant "failed to follow its established procedures to provide and document meal breaks to truck drivers."  (Mot. for Prelim. Approval at 9.)  Additionally, Plaintiffs testified that drivers "could not and did not receive an uninterrupted 30 minute meal period break."  (Id. at 10.)  Thus, the evidence suggests Defendant did not merely fail to ensure that work stopped during meal periods, but also did not make meal periods available to the drivers.  The likelihood of success of Plaintiffs' meal break class action claim therefore remains high.[3]

### 2.   Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiffs contend that since the case likely will turn on legal issues, the risk of loss to both sides is

---

[3] The Court notes that even if Plaintiffs' meal break claim were less viable after Brinker, this would not affect the Court's decision to grant final approval since the parties have not amended their Settlement Agreement. Where settlement approval takes place before formal class certification, the inquiry into the strength of a plaintiff's case focuses mainly on whether the agreement represents a fair and adequate deal for the absent class members given the merits of their possible claims.  See Hanlon, 150 F.3d at 1026 ("settlement class actions present unique due process concerns for absent class members").  Should the merits weigh in favor of the absent class members' possible claims, the Settlement Agreement should reflect that imbalance and provide the class members with a commensurate award.  Thus, in the case where a defendant agrees to a settlement preliminarily, the plaintiff's claims become less viable pending final approval, but neither party amends the settlement, the Court presumes the deal remains a fair and adequate settlement for the absent class members.

great and the likelihood of appeals is also high.
(Donahoo Decl. ¶ 35.)  Since <u>Brinker</u> resolved the main
legal issues here, however, the relative risk of
litigation is now much less than it was at the
preliminary approval stage.  Nevertheless, the expense
and likely duration of further litigation still weigh in
favor of settlement.  Plaintiffs contend that the "high
expense and likely length of continued proceedings" make
settlement appropriate.  (<u>Id.</u>)  Defendant removed the
action to this Court on July 7, 2010.  (Doc. No. 1.)
Since removal, Plaintiffs moved to remand, to compel
discovery, and to certify the class.  (<u>See</u> Doc. Nos. 9,
28, 34.)  Plaintiffs anticipate "years of litigation to
reach a judgment that [is] by no means preordained" in
the absence of settlement.  (Donahoo Decl. ¶ 36.)  Thus,
the Court finds that absent a settlement, the parties
likely would engage in further lengthy litigation, with a
concomitant increase in both expense and delay.  The
Court therefore finds that the "expense" and "duration"
of further litigation weigh in favor of the Settlement
Agreement.

**3.    Risk of Maintaining Class Action Status**
       **throughout the Trial**

Plaintiffs argue that the possibility that the Court
may not certify the case as a class action weighs in
favor of settlement.  (<u>Id.</u> ¶ 36.)  The Court does not

find, however, that there is a specific risk of
maintaining the class action status throughout the trial.
Here, Plaintiffs assert a class of "all current and
former employees employed by Defendant as truck drivers
within the State of California from the period of March
18, 2006 through the Preliminary Approval Date of the
class settlement."  (Settlement § 1.3.)  The numerosity
of the class, as well as the typicality, and commonality
of their claims will likely remain constant throughout
trial.  Thus, the Court finds this factor weighs against
settlement.

### 4.   Amount Offered in Settlement

The Settlement Agreement sets the Maximum Settlement
Sum at $241,500.00.  (Settlement ¶ 1.18.)  From this, the
attorneys' fees of $80,419.00, costs of up to $7,500.00,
and settlement administration costs of up to $11,000.00,
are deducted, leaving the Net Settlement Sum.  (Id.)
From the Net Settlement Sum, the Settlement Agreement
provides that each participating Class Member will
receive an amount based on the Net Workweek Value
multiplied by the number of weeks worked as a driver.
(Id. ¶ 3.6(e).)

Under the revised Settlement Agreement, named
Plaintiffs do not receive individual awards from the
settlement amount; instead, Plaintiffs have resolved

those claims in a separate individual settlement.
(Second Mot. for Prelim. Approval at 4; see also Second
Donahoo Decl. (Doc. No. 47-2) Ex. B (Named Plaintiffs'
separate Settlement Agreement and Release).)  This serves
to mitigate against any potential self-interest on the
part of named Plaintiffs, and ensures the negotiated
Settlement provides a fair award for Class Members.

     The removal of the incentive awards from the Maximum
Settlement Amount remedied the deficiencies in the
initial proposed settlement amount.  Hence, the amount
offered in the settlement now weighs in favor of
approval.

     Plaintiffs' counsel submits that the requested
attorneys' fees constitute one third of the common fund
and fall below the lodestar fees and costs incurred in
litigating the case.  (Mot. for Att'ys' Fees at 1, 6-7.)
The Court finds Class Counsel's declaration in support of
the Motion for Attorneys' Fees provides sufficient
details to justify the requested $80,419.00.  (See Doc
No. 55.)  Specifically, Plaintiffs' counsel drafted
pleadings, propounded discovery, took depositions,
drafted settlement counter offers, negotiated and drafted
the settlement agreement, and drafted all documents for
preliminary and final approval.  (Id. at 13-14.)  The
Court therefore finds the requested amount of $80,419.00

1  to be within a reasonable and fair range for

2  approximately two and a half years of work on this case.

3

4      **5.   Extent of Discovery Completed, and Stage of**

5          **Proceedings**

6      This factor requires that the Court evaluate whether

7  "the parties have sufficient information to make an

8  informed decision about settlement." <u>Linney v. Cellular</u>

9  <u>Alaska P'ship</u>, 151 F.3d 1234, 1239 (9th Cir. 1998).

10 Here, Plaintiffs show their counsel conducted the

11 following discovery: (1) production and review of

12 Defendant's payroll documentation and Plaintiffs'

13 employee records; (2) production of spreadsheets showing

14 the number of workweeks, or partial weeks, worked by each

15 member of the proposed class; (3) production of Class

16 Members' names and contact information; and (4) the

17 deposition of Defendant's corporate designee. (Donahoo

18 Decl. ¶¶ 17-19.)  Accordingly, the Court finds that the

19 parties possessed sufficient information to make an

20 informed decision about the settlement.

21

22     Further, no trial date has been set, and it appears

23 the action has reached a settlement at a relatively early

24 phase of the litigation.  The parties have not litigated

25 the issue of class certification, and instead jointly

26 stipulated to stay the deadline on the Motion to Certify

27

28

1  Class in order to file preliminary approval of class

2  settlement.  (Doc. No. 37.)

3

4      Thus, this factor weighs in favor of the Court

5  finding the Settlement Agreement reasonable.  It shows

6  the attorneys have spent sufficient time to allow the

7  parties to make an informed decision about settlement,

8  but not a significant time; hence, this leaves more money

9  for the class members to recover from the common fund.

10  Accordingly, the Court finds that this factor supports

11  final approval of the settlement.

12

13      **6.   Experience and Views of Counsel**

14      Plaintiffs' counsel Richard E. Donahoo has been

15  practicing for 15 years and has developed an expertise in

16  employment law, including wage and hour litigation.

17  (Donahoo Decl. ¶ 3-4.)  Mr. Donahoo has been lead counsel

18  in at least seven multi-party employment claims,

19  including six class actions.  (Id. ¶ 5-9.)  Mr. Donahoo

20  has also been named co-lead counsel in two contested

21  motions for certification of nationwide collective

22  actions in the United States District Court.  (Id. ¶ 10.)

23  The Court concludes counsel is competent, experienced,

24  and not subject to influence by the opposing party.

25

26

27

28

24

Plaintiffs' counsel also attests that the settlement amount is fair and reasonable taking into consideration the amounts received in other similar wage and hour class actions. (Id. ¶ 39.)  Defendant's counsel also filed a declaration in support of final approval of the settlement. (See Decl. of A. Jack Finklea (Doc. No. 56).)  The Court therefore finds the views and experience of counsel weigh in favor of final approval.

### 7. Class Members' Reaction to the Proposed Settlement

During the notice period, 90 responses were submitted, of which 88 are valid claims; there were no formal objections and no requests for exclusion.  The Court finds the substantial participation of Class Members, as well as the lack of any objections, weighs in favor of final approval.

### 8. Attorneys' Fees and Individual Claims

Plaintiffs request $80,419.00 in attorneys fees, and $4,117.07 in costs. (Mot. for Att'ys' Fees at 2.) For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." Staton, 327 F.3d at 963.

1    Plaintiffs assert claims under California state law;
2  California law thus governs their application for
3  attorneys' fees.  See Vizcaino v. Microsoft Corp., 290
4  F.3d 1043, 1047 (9th Cir. 2002).  California recognizes
5  the common fund doctrine for the award of attorneys' fees
6  to prevailing plaintiffs whose efforts result in creation
7  of a fund benefitting others.  Serrano v. Priest, 20 Cal.
8  3d 25, 35 (1977).  Under both California and Ninth
9  Circuit precedent, a court may exercise discretion to
10  award attorneys' fees from a common fund by applying
11  either the lodestar method[4] or the percentage-of-the-fund
12  method.[5]  Wershba v. Apple Computer, Inc., 91 Cal. App.
13  4th 224, 254 (2001); Fischel v. Equitable Life Assurance
14  Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002) (citing
15  Vizcaino, 290 F.3d at 1047); Alberto v. GMRI. Inc., 252
16  F.R.D. 652, 667 (E.D. Cal. 2008) ("Irrespective of the
17  chosen method, the district court should be guided by the
18  fundamental principle that fee awards out of common funds
19  be reasonable under the circumstances.") (internal
20  quotations ommitted).

21

22

23  _____

24  [4] Under the lodestar method, the court calculates the
    fee award by multiplying the number of hours reasonably
25  spent by a reasonable hour rate and then enhancing that
    figure, if necessary to account for the risks associated
26  with representation.  Graulty, 886 F.2d at 272.

27  [5] Under the percentage-of-the-fund method, the court
    calculates the fee award by designating a percentage of
28  the total common fund.  Six Mexican Workers v. Ariz.
    Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

1        Plaintiffs' requested amount of attorneys' fees

2   appears reasonable; under the common fund method, the

3   applicable benchmark is 25%, but a district court may

4   adjust to this benchmark to take into consideration

5   unusual circumstances.  See Hanlon, 150 F.3d at 1029

6   ("This circuit has established 25% of the common fund as

7   a benchmark award for attorney fees."); Graulty, 886 F.2d

8   at 272 (the 25% benchmark can be adjusted upward or

9   downward "to account for any unusual circumstances[,]"

10  but the justification for adjustment must be clear).

11  Thus, the "25% benchmark rate, although a starting point

12  for analysis, may be inappropriate in some cases.

13  Selection of the benchmark or any other rate must be

14  supported by findings that take into account all of the

15  circumstances of the case." Vizcaino, 290 F.3d at 1048.

16

17       Here, Plaintiffs request the Court approve the

18  Settlement Agreement with the provision allowing for

19  attorneys' fees of one third the Maximum Settlement Sum.

20  (Mot. for Att'ys' Fees at 3.)  The Court will only

21  approve fee amounts over 25% of the common fund "if the

22  request for attorneys' fees is reasonable and

23  proportionate to the work performed." Clesceri v. Beach

24  City Invst'ns & Prot. Servs, Inc., No. CV-10-3873-JST

25  (RZx), 2011 WL 320998, at *10 (C.D. Cal. Jan. 27, 2011)

26  (citing Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468,

27  480 (E.D. Cal. 2010)).  Plaintiffs' counsel provides

28

billing records to show that the lodestar amount for the
work expended on this case, $125,486.50, exceeds the
requested common fund amount.  (Mot. for Att'ys' Fees at
6; see Third Donahoo Decl. (Doc. No. 55) Ex. A.)
Moreover, the Court does not find awarding an amount of
$80,419.00 here would represent a windfall for
Plaintiffs' counsel given counsel's extensive work on the
case for over two and a half years and the risk of
representing Plaintiffs on a contingency basis.

     Thus, the attorneys' fees provided under the
Settlement Agreement weigh in favor of final approval.

### 9. Conclusion

     The majority of the factors discussed above weigh in
favor of final approval.  Only the risk of maintaining
the class action through trial weighs against settlement.
The Court, therefore, finds the Settlement Agreement
fair, reasonable, and adequate.

## C.   Adequacy of Notice Procedure

     Rule 23 requires the court to direct to Class Members
"the best notice that is practicable under the
circumstances, including individual notice to all members
who can be identified through reasonable effort."  Fed.
R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1)
requires the court to "direct notice in a reasonable

manner to all class members who would be bound by the proposal."  The notice must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment.  Fed. R. Civ. P. 23(c)(2)(B).  Plaintiff must provide notice to potential opt-in class members that is "timely, accurate, and informative."  See Hoffmann-La Rouche Inc. v. Sperling, 493 U.S. 165, 172 (1989).  Likewise, claim forms must be informative and accurate.  Id. at 172; Churchhill Village, L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard").

On February 28, 2012, the Court approved the proposed Notice for the Class.  (See Feb. 28, 2012, Order at 6.) In its Preliminary Approval Order, the Court determined that the proposed form and manner of class notice were adequate, and the Court now evaluates whether the parties executed class notice in accordance with the Court's Preliminary Approval Order.

1    The Settlement Administrator provided notice to the
2  Class using the form and process the Court preliminarily
3  approved.  (Mot. at 5-7.)  The Settlement Administrator
4  mailed the Notice Packet, which included the Notice, the
5  Claim Form, a Request for Exclusion Form, a Rescission of
6  Exclusion Form, in both Spanish and English, and a
7  stamped envelope with the Settlement Administrator's
8  mailing address, by first-class mail to each Class
9  Member.  (<u>Id.</u> at 7.)  The Settlement Administrator
10 received no written objections to the proposed Settlement
11 Agreement, and no requests for exclusion.  (<u>Id.</u>)  The
12 Settlement Administrator did receive two invalid claims,
13 and 16 deficient claims, but sent letters to the
14 claimants requesting a cure.  (<u>Id.</u>)

15

16    Class counsel complied with the notice requirements
17 of the Preliminary Approval Order.  The ultimate Notice
18 sent to Class Members pursuant to the Preliminary
19 Approval Order was the best notice practicable under the
20 circumstances and provided sufficient notice to Class
21 Members through Class Counsel's reasonable effort.

22

23 **D.  <u>Cy</u> <u>Pres</u> Recipient**
24    The parties agree that the residual amount of the Net
25 Settlement Sum remaining after the deduction of
26 attorneys' fees and costs, administration costs, and
27 individual settlement payments will be donated to the
28

1   Truckers' United Fraternity of Super Offspring of the

2   Boss ("TUFSUB") scholarship fund.  (See Doc. No. 63.)

3

4       "Federal courts have broad discretionary powers in

5   shaping equitable decrees for distributing unclaimed

6   class action funds."  Six (6) Mexican Workers v. Ariz.

7   Citrus Growers, 904 F.2d 1301, 1307 (9th Cir. 1990)

8   (citing Van Gemert v. Boeing Co., 739 F.2d 730, 737 (2d

9   Cir.1984)).  Cy pres distribution is "to put the

10  unclaimed fund to the next best compensation use, e.g.,

11  for the aggregate, indirect, prospective benefit of the

12  class."  Masters v. Wilhemina Model Agency, Inc., 472

13  F.3d 423, 436 (2d Cir. 2007) (citations omitted).  Under

14  the cy pres doctrine, the donors' or parties' intent must

15  be followed "as nearly as possible."  In re Wells Fargo

16  Secs. Litig., 991 F. Supp. 1193, 1195 (N.D. Cal. 1998)

17  (citations omitted).  "The use of cy pres . . . to

18  distribute unclaimed funds may be considered only after a

19  valid judgment for damages has been rendered against the

20  defendant."  Six (6) Mexican Workers, 904 F.2d at 1307.

21

22      "While the law generally favors distributing

23  unclaimed funds for a purpose as near as possible to the

24  legitimate objectives underlying the lawsuit, a direct

25  nexus between the injured plaintiffs and the cy pres

26  recipients is neither always feasible nor required."

27  Hopson v. Hanesbrands, Inc., No. CV-08-0844 EDL, 2009 WL

28

31

928133, at *9 (N.D. Cal. Apr. 3, 2009) (comparing <u>In re</u>
<u>Airline Ticket Comm'n Antitrust Litig.</u>, 307 F.3d 679, 680
(8th Cir. 2002) (holding that the trial court had abused
its discretion with respect to <u>cy pres</u> distribution
because there was no nexus between the injured class and
the local organizations receiving unclaimed funds)
(citing <u>Powell v. Georgia-Pacific Corp,</u>, 119 F.3d 703,
706-07 (8th Cir. 1997) (approving the district court's
order that nearly $1 million in remainder settlement
funds be distributed as scholarships to African-American
high school students because the scholarship program
carried out the plaintiffs' desire and addressed the
subject matter of the lawsuit: employment opportunities
available to African Americans in the region)), <u>with</u>
<u>Superior Beverage Co. v. Owens-Ill., Inc.</u>, 827 F. Supp.
477, 479 (N.D. Ill. 1993) (holding that unclaimed funds
remaining after settlement of an antitrust case may be
distributed to other public interests not closely related
to the origins of the case)).

    The Court finds the TUFSUB scholarship fund has a
sufficient nexus to the class here and therefore approves
the <u>cy pres</u> designation.

1 |           **IV. CONCLUSION**

2 |       After considering the foregoing factors, Court finds

3 | the Settlement is fundamentally fair, reasonable, and

4 | adequate.  Accordingly, the Court:

5 |       (1) GRANTS the Motion for Final Approval;

6 |       (2) APPROVES the Maximum Settlement Amount of

7 |           $241,500.00 to be paid by Defendant and

8 |           dispersed to Class Members, Class Counsel, and

9 |           the Settlement Administrator under the proposed

10 |          formula outlined in the Settlement Agreement;

11 |          and

12 |      (2) DISMISSES the action WITH PREJUDICE.  All Class

13 |          Members shall be bound by this Order.

14 |

15 | **IT IS SO ORDERED.**

16 |

17 |

18 | Dated: <u>July 9, 2012</u>

19 |                    VIRGINIA A. PHILLIPS
   |           United States District Judge